OPINION OF THE COURT
Lawrence H. Ecker, J.
The decision and order of the court is as follows:
This pendente lite application for spousal maintenance raises an issue of apparent first impression as to whether the present income rule applicable in child support proceedings may be similarly applied! in determining spousal maintenance.
By order to show cause issued May 10, 2013, defendant L.A. seeks (1) interim support and maintenance from plaintiff S.A. in the amount of $17,000 per month and payment of all expenses related to the maintenance of the marital residence; (2) interim counsel fees of $35,000; and (3) such other and further relief as to the court may seem just and proper. This motion was first returnable on June 24, 2013, and has been adjourned by consent of the parties. The purpose of the adjournments was to allow the time necessary for the parties’ neutral evaluator, Steven Kaplan, CPA, to compile data and provide an analysis (hereinafter the Kaplan report) as to how defendant’s prior earnings have been spent. By email, dated November 15, 2013, the court advised the parties that if the Kaplan report was not received by November 22nd, this motion would be decided in its absence. The case is scheduled for appearances on December 11, 2013.
Background
The parties were married in 1987 and separated in 2009. They have one child, age 26. Plaintiff is 56 years old and defendant is 64 years old. Plaintiff is residing in an apartment in New York City while defendant continues to reside in the marital residence in Westchester County, New York. Plaintiff is employed in the financial services industry and has been the breadwinner throughout the marriage. Defendant has not been substantially employed in 23 years.
The court has already issued certain orders within this motion sequence, and in two other motion sequences (sequence No. 1 and sequence No. 3). As pertinent to this motion, on June 24, 2013, the court permitted plaintiff to take a $35,000 early *746 distribution from his 401(k) account, as against his distributive share thereof. From those funds, he was ordered to make the following payments: (a) to bring the first and second mortgages on the marital residences up to date (approximately $15,000 in total); (b) to bring the monthly loan payment on the Range Rover used by defendant up to date ($999 per month); and (c) to pay defendant $5,000 per month, effective July 1, 2013, as and for temporary maintenance, pending the determination of this motion. In addition, defendant was given a distribution of $35,000 from plaintiffs 401(k) account, subject to reallocation, with the proviso that she maintain a full accounting as to how those monies were spent, and that she pay her own expenses from the monthly temporary interim maintenance, and the advanced distribution from the 401(k) account. Plaintiff, likewise, was ordered to maintain a full accounting of the funds distributed to him.
Maintenance
The instant pendente lite maintenance application requires the court to determine whether it must rely on the parties’ 2012 federal tax return as the last filed return, in determining plaintiff’s income, notwithstanding it is undisputed that plaintiffs present income has been sharply reduced in 2013 to less than one third of his last year’s income, after plaintiff lost his employment in October 2012 and began new employment in April 2013. The differential in salary is significant: plaintiff earned $819,049 in 2012 and since beginning his new employment in April 2013, he is making $20,000 per month or $240,000 per annum.
The court makes the following factual findings, based upon the parties’ respective submissions. Plaintiff is employed in the financial services industry. The parties’ 2012 joint federal income tax return, filed with the court subsequent to the filing of the instant order to show cause, reports plaintiff’s earned income as $819,049. Defendant is unemployed. In addition to plaintiffs earnings in 2012, the parties paid income taxes on a withdrawal of $111,685 from a pretax account. Hence, gross earnings for 2012 were $930,734, before deduction for FICA and Medicare taxes. Against this amount was a reduction of $1,127 relative to a capital loss. The 2012 joint federal tax return is dated September 25, 2013, presumably filed by the extension deadline of October 15, 2013. The FICA withholding amount on plaintiffs reported income should have been $4,624.20 ($110,100 x 4.2%), while the Medicare withholdings should have been *747 $11,876.21 ($819,049 x 1.45%) for a total deduction of $16,500.41. Hence, for the calculation of the presumptive amount of temporary maintenance, as set forth in Domestic Relations Law § 236 (B) (5-a) (b) (4) and (5), plaintiffs adjusted gross income, as reported on the parties’ last filed income tax return, was $802,548.59 ($819,049 less $16,500.41).
In determining the presumptive amount of spousal support, the court is not taking into consideration the withdrawal of the $111,685 from the pretax account as reported in 2012. According to the Temporary Spousal Maintenance Guidelines Calculator, on the entirety of plaintiff’s adjusted gross earnings, the amount due plaintiff on the first $524,000 thereof is $157,200 per annum, or $13,100 per month. As to the amount of adjusted gross earnings in excess of $524,000, the court must determine any additional amount to be awarded, upon application of the 19 statutory factors set forth in Domestic Relations Law § 236 (B) (5-a) (c) (2) (a) (i)-(xix). For the reasons stated infra, the court will forgo that determination.
Plaintiff claims through no fault of his own, he was terminated in October 2012 from his position upon which his 2012 salary is based. Defendant disputes the assertion that the termination was involuntary. That issue cannot be decided on the papers and will be considered at trial. Plaintiff represents that effective April 8, 2013, he has been employed, on a temporary basis, in a managerial capacity for an asset management company at a salary of $20,000 per month with an end date of December 31, 2013. (Plaintiffs exhibit A.) Plaintiffs pay statement of April 15, 2013 for the immediate two week period from April 1, 2013 through April 15, 2013 (plaintiffs exhibit B) shows gross earnings of $5,454.55 for six days from April 8 through April 15, 2013. The same pay stub shows that plaintiff’s semimonthly base pay is $10,000 or $240,000 per annum.
As against plaintiff’s earning history for 2012 and 2013, plaintiff reports his expenses on a statement of net worth, sworn to on February 23, 2013, in conjunction with motion sequence No. 1 or No. 3. He claims total monthly expenses of $25,559.80, part of which includes defendant’s expenses. Defendant alleges a portion of plaintiffs expenses are being spent on plaintiffs companion. Defendant claims total monthly expenses of $18,402. The parties’ expenses include as follows:
Housing expenses (combined): $10,000 per month
Food and beverage expenses (combined): $4,000 per month
*748 Clothing expenses (combined): $1,000 per month Insurance expenses: plaintiff: $1,300 per month; defendant: not provided
Non-reimbursed medical expenses: $1,400 per month
Household maintenance: $2,795 per month
Household help: $1,720 per month
Auto expenses: at least $2,780 per month, including the $999 payment for defendant’s Land Rover
Recreation expenses: $2,850 - $2,930 per month (combined) (inclusive of country club dues)
Miscellaneous expenses: $2,440 per month (combined)
Clearly, on the parties’ present combined gross income, namely the $20,000 on the gross monthly salary plaintiff now receives, the parties cannot possibly maintain their present lavish lifestyles. In addition to their significant monthly expenses, the parties’ respective statements of net worth reveal they have accumulated over $1 million in debt.
It is incumbent upon the court, inter alia, to give due consideration to the pre-separation standard of living of the parties. As provided by statute, this obligation is to be measured as against the income reported in the parties’ last filed income tax return, or which should be reported therein. The issue in this case is whether the income, as reported in the 2012 joint federal income tax return, being the last filed tax return, must be utilized for the determination of plaintiff’s maintenance obligation as of the date hereof.
Domestic Relations Law § 236 (B) (5-a) (b) (4) (a) states that “income [is] as defined in the child support standards act and codified in section two hundred forty of this article and section four hundred thirteen of the family court act.” Domestic Relations Law § 240 (1-b) (b) (5) states that income “shall mean, but shall not be limited to, the sum of the amounts determined by the application of clauses (i), (ii), (iii), (iv), (v) and (vi) of this subparagraph reduced by the amount determined by the application of clause (vii) of this subparagraph.” In this case, clause (vii) is not relevant. Further the court has ruled, supra, that it will only consider the earned income reported in 2012 and not the non-recurrent income derived from the invasion of the pretax account(s).
Domestic Relations Law § 240 (1-b) (b) (5) (i), in defining income, states that it is the “gross (total) income as should have *749 been or should be reported in the most recent federal income tax return.” In this case, despite the dispute as to the circumstances of plaintiffs loss of his prior position, from which he earned the amount reported in 2012, it is not disputed that his 2013 income, since April 1st, has been significantly reduced to $20,000 per month. Under these circumstances, pendente lite, should the court employ the 2012 amount earned of $819,049 or annualize the current 2013 rate of compensation of $240,000?
In the context of a child support proceeding, Family Court Act § 413 (1) (b) (5) (i) provides that the relevant income figure is the “gross (total) income as should have been or should be reported in the most recent federal income tax return,” although nothing in the statute prohibits a court’s reliance upon partial information from a tax year not yet completed. (Matter of Azrak v Azrak, 60 AD3d 937 [2d Dept 2009]; Matter of Moran v Grillo, 44 AD3d 859 [2d Dept 2007]; see also Matter of Culhane v Holt, 28 AD3d 251 [1st Dept 2006]; Matter of Taraskas v Rizzuto, 38 AD3d 910 [2d Dept 2007], citing Matter of Kellogg v Kellogg, 300 AD2d 996 [4th Dept 2002] [income earned during a tax year not completed at the commencement of trial may, under some circumstances, be weighed by the court].)
It is clear that in the child support context, the present income rule, as enunciated in the above cases, may be applied when appropriate. Here, the determination is for spousal maintenance, not child support. Given the inclusion in the language of Domestic Relations Law § 236 (B) (5-a) (b) (4) (a) that “income” is as defined in the Child Support Standards Act and codified in section 240 of this article and section 413 of the Family Court Act, as cited in Matter of Culhane v Holt, this court concludes that it is appropriate, in the context of a spousal support proceeding, to apply the same present income rule as applicable in child support proceedings.
The court’s application of the present income rule in this case would be consistent with the often repeated principle that the purpose of pendente lite relief is to ensure that a needy spouse is provided with funds for his or her support {Fales v Fales, 102 AD3d 734 [2d Dept 2013]), and that an award “should reflect an accommodation between the reasonable needs of the moving spouse and the financial ability of the other spouse with due regard for the parties’ preseparation standard of living.” (Pappas v Pappas, 103 AD3d 615, 616 [2d Dept 2013], quoting Campanaro v Campanaro, 292 AD2d 330, 330 [2d Dept 2002].) Any perceived inequities in pendente lite relief can best be remedied *750 by a speedy trial, at which the parties’ financial circumstances can be fully explored. (Stock v Stock, 108 AD3d 663 [2d Dept 2013]; Shane v Shane, 104 AD3d 837 [2d Dept 2013].) Here, to establish plaintiffs income as reported on the parties’ last filed income tax return at $802,548.59 ($819,049 less $16,500.41), after giving due consideration to the amount of income above $524,000, may result in a presumptive award of temporary maintenance that exceeds defendant’s legitimate monthly expenses (Chusid v Silvera, 110 AD3d 660 [2d Dept 2013]) and would be unjust and inappropriate.
The court finds that plaintiffs gross income, annualized for tax year 2013, and hereby imputed to him, is $240,000. His adjusted gross income for calculation of his spousal maintenance obligation is $229,470.60.* Defendant has no income. According to the Temporary Spousal Maintenance Guidelines Calculator, annual interim spousal support is $68,841.18, or $5,736.77 monthly. Plaintiff is hereby ordered to pay the amount of $5,737 monthly (rounded up) to defendant, effective December 1, 2013, non-taxable to defendant, and nondeductible by plaintiff. In addition, plaintiff shall be required to continue defendant’s medical insurance coverages, and to pay 100% of her non-reimbursed, non-covered out-of-pocket medical expenses. All medical care providers, including defendant’s therapy, shall, unless in an emergency, be “in-network.” This award is retroactive to April 18, 2013, the date of a letter request by defendant’s counsel for a rule E pre-motion conference seeking pendente lite relief. Such procedure, in lieu of the filing of a pendente lite motion, is required by rule E (1) of the Operational Rules of the Westchester Supreme Court Matrimonial Part. Retroactive sums due by reason of this award shall be paid at the rate of $500 per month commencing December 1, 2013 in addition to the sums awarded until all arrears have been satisfied. Plaintiff may take a credit for sums paid pursuant to the court’s prior order of June 24, 2013 for $5,000 temporary maintenance per month. Subject to plaintiff being current in his maintenance payments, the arrears are as follows:
*751 Per Diem
($5,737 per month / 30 days = $191.23 per diem)
Maintenance Payable
April 18 - 30, 2013 (13 days at $191.23 per diem) $ 2,486.03
May 1, 2013 - November 30, 2013 (7 months x $5,737) $40,159.00
Total due $42,645.03
Credits to Plaintiff
My 1, 2013 - November 30, 2013 (5 months x $5,000)
Total credits: $25,000.00
Arrearage due: $17,645.03
The court is mindful that in its prior order of June 24, 2013, defendant was given a distribution of $35,000 from plaintiff’s 401(k) account to be applied towards her expenses that remains subject to a full accounting as to how the monies were spent and is subject to reallocation at trial.
Counsel Fees
Defendant’s application seeking interim counsel fees was disposed of by the court’s order of June 24, 2013 directing plaintiffs payment of $20,000 to defendant for interim counsel fees, to be paid from plaintiff’s 401(k) account and charged against plaintiffs equitable share thereof. Thus, the June 24th court order constitutes the present order of the court relative to defendant’s interim counsel fee application now under consideration, without prejudice to further application.
Conclusion
The court recognizes that the spousal support provisions in this decision and order will greatly affect the parties’ respective post-separation standards of living. They need to consider the financial predicament they are in, and how to deal with the future. They are now suffering the consequences of their prior high standard of living. It is beyond dispute that two cannot live as cheaply as one, and that “hardship” at any economic level follows drastic losses of income. It is time for the parties to recognize the financial reality they may well face in the future, given their ages, work experience and future prospects for employment. The court urges that the parties’ focus should be on financial planning with asset and debt liquidation. The continuance of this costly litigation will not heal their wounds, both economic and emotional, already suffered, but rather will exacerbate them.
In view of the foregoing, it is hereby ordered that defendant’s application for pendente lite maintenance is granted and de *752 fendant is awarded $5,737 monthly, effective December 1, 2013, non-taxable to defendant and nondeductible by plaintiff; and it is further ordered that arrearage of $17,645.03 is payable at the rate of $500 per month commencing December 1, 2013 in addition to the sums awarded until all arrears have been satisfied; and it is further ordered that plaintiff shall pay defendant’s medical insurance coverage, including 100% of her non-reimbursed, non-covered out-of-pocket medical expenses. All medical providers, including defendant’s therapy, shall be “in-network” unless an emergency; and it is further ordered that defendant’s application for pendente counsel fees is granted in the amount of $20,000, as heretofore ordered on June 24, 2013; and it is further ordered that any relief requested by either party not addressed herein is denied.

 FICA 2013 cutoff of $113,700 x 6.2% = $7,049.40; Medicare $240,000 x 1.45% (no surcharge as joint income less than $250,000) = $3,480. The combined deduction is $10,529.40. $240,000 - $10,529.40 = $229,470.60.